Max J. Wolff, Ref.
The defendant has moved to vacate the service upon it of the summons in this action, contending that it is not subject to the jurisdiction of this court. It asserts that it transacts no business within this State, that it is not present here, and that it has not so conducted its affairs as to subject itself to such jurisdiction. It has by stipulation waived the question whether the summons was delivered to a proper person in accordance with section 229 of the Civil Practice Act.
The defendant is a corporation of the State of Louisiana. It has not filed a certificate of doing business in this State. It is a shipping company engaged in foreign trade and as such carries cargo and transports passengers between ports on the Gulf of Mexico and the west coast of South America. It operates four vessels. It has no offices of its own in New York and maintains no employees here. Its ships do not visit the port of New York. Its business offices are in New Orleans. *131 No directors’ meetings are held here. No contracts are made within the jurisdiction. Fifty per cent of the capital stock of the defendant is owned by Lykes Bros. Steamship Co., Inc., hereinafter referred to as Lykes, which is also a Louisiana corporation. Lykes acts as general agent for the defendant in every port within the United States where cargo is loaded except New Orleans, where the defendant has its home office. The other 50% of the capital stock of the defendant is owned by W. B. Grace & Co., hereinafter called Grace.
Lykes has offices in New York and employs five to seven persons for the purpose of soliciting business in this jurisdiction. These individuals are primarily concerned with soliciting orders for the carriage of freight by the 50 to 60 vessels operated by Lykes, but they also take orders for space on the defendant’s four vessels. Lykes is paid on a commission basis for its services as the defendant’s agent. During the 12-month period from July 15, 1956, to July 15, 1957, the defendant carried 543,470.11 tons of cargo. Of this amount 74,583.80 tons, or 13.72%, resulted from orders forwarded to the defendant by Lykes from New York. The total revenue from cargo carried by the defendant during that year was $11,101,375.31 of which $2,001,575.06, or 18.03%, was derived from these orders thus received by the defendant through Lykes.
When Lykes receives a request for space on the defendant’s vessels, a memorandum is sent to the defendant in New Orleans, either by telephone, teletype or mail. No document or receipt is given by Lykes in New York to the person placing the order and none is sent through Lykes by the defendant. All contracts are written and signed in New Orleans or at the port of loading. Bills of lading are prepared and signed at the loading ports on the Gulf of Mexico and there delivered to the shippers or their agents. Lykes does not collect freight money in New York, which is paid either at the port of loading or of delivery. Infrequently shippers request that documents be delivered to a designated bank under a letter of credit. In the few cases in which this has occurred, the papers were processed in New Orleans or at the loading port and transmitted to the designated bank for collection of freight charges. There were such transmissions to New York banks but this did not occur to any significant extent.
The present action is based upon personal injuries allegedly sustained on the high seas by the plaintiff, a resident of New York, while he was a seaman upon a vessel operated by the defendant. Through Grace the defendant took delivery of the ship from the United States Government at the port of New *132 York under a bareboat charter. The vessel was outfitted here by Grace, which enlisted a crew to move the ship to New Orleans from New York. The plaintiff was one of the crew who signed on for this coastwise voyage, doing so on October 29, 1956. When the ship arrived at New Orleans, the plaintiff signed off, receiving his pay. This occurred on November 12, 1956. He then, on November 13, 1956, signed new articles for a foreign voyage on the same vessel. It was on this foreign voyage, on which cargo was carried, that he sustained his alleged injuries.
It thus appears that the defendant is wholly owned by Lykes and Grace; that Lykes, half-owner of the defendant, is present within this jurisdiction on a permanent, not a transitory basis, and that it engages in the solicitation of business for the defendant within the city of New York; that the defendant benefits substantially from these activities, which, as hereinabove stated, brought to it, within a 12-month period, revenue in excess of two million dollars or more than 18% of its total gross revenue derived from cargo. If Lykes were a natural person, owning-one half of the stock of the defendant, who engaged himself in the defendant’s behalf within this jurisdiction to such a substantial extent and with such consequences, there would, I think, be little room to doubt the defendant’s presence within the jurisdiction. That Lykes, thus active here, is a foreign corporation should not, it seems to me, lead to a different result (cf. Sterling Novelty Corp. v. Frank & Hirsch Distr. Co., 299 N. Y. 208).
Material also is the circumstance that the only other owner of the outstanding shares of stock of the defendant is a corporation which, certainly in relation to the vessel for which the plaintiff was hired, was active within the jurisdiction in the defendant’s behalf, taking delivery of the vessel in the port of New York, outfitting it here and signing on a local crew, which included the plaintiff. The shortness of the duration of these activities of the defendant within New York by Grace, its agent, did not prevent their taking effect as an implied submission to jurisdiction (cf. Bogert & Hopper v. Wilder Mfg. Co., 197 App. Div. 773). This is especially and strongly true for an action arising out of injuries sustained by a seaman, a resident of New York, who was hired in New York. The plaintiff could hardly have thought, when he was hired by the defendant in this port as a crew member of one of the defendant’s vessels, then within the harbor of New York, that he dealt with a company not present in this jurisdiction and that he would be required to sue in New Orleans or at some other distant place for injuries he might sustain. Technically, the voyage was *133 broken when the plaintiff was paid off and made to sign new articles in New Orleans. Nevertheless it would be unrealistic and unreasonable to impute to the plaintiff, a seaman employed as a wiper, the notion or belief that there was no connection between the voyage of the vessel from New York to New Orleans and its continuance, after the loading of cargo, to a South American port. Basic assumptions of an admiralty lawyer or of a government official dealing in an administrative capacity with shipping matters are not necessarily shared by ordinary seamen.
It therefore seems to me that, under any of the various accepted standards, the defendant has brought itself within the jurisdiction of this court. It has been doing business here even under the old and strict “ solicitation plus ” rule; it is present here through the two corporations which are its owners and which have been active in its behalf within this jurisdiction; and it has had substantial 11 contacts ’ ’ with ‘ ‘ the territory of the forum”. Furthermore, and although there is no direct evidence on this point, the indications are that the same crew members who were signed on in New York went with the ship on its foreign voyage, and it may fairly be considered that they were the witnesses to the accident in which the plaintiff claims he was injured. It would 1 ‘ offend ‘ traditional notions of fair play and substantial justice 5 ” (International Shoe Co. v. State of Washington, 326 U. S. 310, 316, as quoted in McGee v. International Life Ins. Co., 355 U. S. 220, 222) if the plaintiff, who lives here, were compelled to sue the defendant in a distant State; and I can find no injustice to the defendant or any interference with foreign commerce if it be required to defend the action here where it hired the plaintiff.
I find that the defendant was subject to the jurisdiction of this court when the summons was served upon it on July 15, 1957. I recommend that its motion to vacate such service and to dismiss the action be denied.
Francis E. Rivers, J.
In opposition to this motion to confirm the Referee’s report, the defendant argues, among other things, that there was no evidence of plaintiff’s residence in New York. I therefore had a portion of the stenographer’s minutes of the hearing before the Referee transcribed, and said transcript is ordered placed on file with the papers submitted on this motion. Said transcript clearly shows that the defendant’s counsel, after examination of Marine Hospital records, stipulated that the plaintiff was a resident of New York County at the time of the commencement of this action in July, 1957. As *134 to the other points raised in opposition to this motion, I do not consider them important in the light of the entire report and opinion of the Referee. I have studied the report and opinion of the Referee with care, and the conclusions reached by him seem eminently sound to me. Accordingly, the motion to confirm is granted and the report is hereby confirmed on the opinion of the learned Referee. The motion of the defendant for an order vacating and setting aside the service of the summons herein on the alleged ground that the court has no jurisdiction of the defendant, upon which decision was reserved pending the report of the Referee, is hereby denied in all respects.